I'd like to reserve a couple minutes of my time for rebuttal with the Court's permission. I'd like to just inform the Court to make the matter, the argument, easier here today. The Government, it's my understanding, is prepared to ask this Court to remand the case back to the District Court on the issue of sentencing to allow the Government to supplement the record and allow the District Court to engage in a more meaningful, modified, categorical approach. And I'm in agreement with that request. I have no objection to it. So I won't be speaking of the sentencing issue here today in light of that governmental request. The issue here fundamentally, especially with regards to assignments of error two and three, is whether or not the conduct that Mr. Romm engaged in actually violated the charge statute. And fundamentally, that is our major contention of what was wrong with the guilty verdict of the trial in this case. To summarize as briefly as I can, it is our position that mere viewing Internet sites does not violate the statute. And our primary basis for that is the plain language and structure of the statute. In my opening brief at the end of it, there is an appendix which actually has the statute, the charge statute, 18 U.S. Code 2252A. And if you look at that statute, it's addendum to the back of the opening brief. Well, what we're really looking at is whether it was received and or possessed. Is that right? Exactly. And the Government's theory of prosecution here is that Mr. Romm, when he was in Las Vegas in this hotel room, was viewing Internet sites containing child pornography. And we essentially conceded in our opening statement. And then what did he do with those after he viewed them? What did he do with them after he viewed them? Did he punch a key and try to get rid of them or something? Well, the theory in the statements here that the Government would say is that he viewed them for a period of time on the Internet and then attempted to delete the Internet history or the Internet cache after viewing it. There's no allegation in this case that he actively downloaded the file. And it's important to keep that distinction in mind. If you go on the Internet and you look at an Internet site, it is akin to viewing a catalog, if you will, or engaging in mortgage or the Ninth Circuit case, they talked a lot about this analogy, that when you go on the Internet, you're essentially looking at a catalog. And when you order something, you actively tell that site, download this file into my computer. Counsel. Yes. Let me ask you a question. Sure. You have 42 images in an Internet cache file. Do you agree to that? I would contest the word images. I would state that they are not images because they are not accessible to the user as images. Your point is, were they accessible to Mr. Rom? To the user, yes. Wasn't there testimony from a federal expert witness that he could have accessed those and may have accessed those images? It depends on how you define access, Your Honor. When electronic matter, if you will, is in the temporary Internet cache, you as the user have the ability to go through your Internet Windows tree, find that file, and begin manipulating those images to try to make them into regular files. Go into there and try to tell your computer, save this as a normal file in another file. But there's no evidence that that occurred in this case. Your question is, let me put it again. He had the ability to access the files in the Internet cache and view them, right? If he had taken another affirmative step, yes, then they theoretically could have been viewed. And once they could be viewed, if he was hooked up to a printer, he could have printed them? Yes. And once they were viewed, if he wanted to send them to a friend, he could have forwarded them? Yes. So what else do you need to possess or receive than the ability to copy, to forward, and to view? Well, you need to have, first of all, have that ability, Your Honor. He did not have that ability on his computer without having taken further steps, which is criminal conduct, right? That he had that ability with his, and I'm no computer whiz, but that he had a program that had he used it, he could have called up these images from his Internet cache? If he had taken, just like anything else, Your Honor, if he had taken affirmative steps to put this stuff on his computer, then he could have done that. But he did not take a further step later. Instead of putting it on his computer to download it into a file, he took the further step of eliminating it from his cache, correct? Well, let's be clear that the testimony on that is conflicting. None of the experts were ever able to say exactly how the Internet cache was deleted, whether it was an automatic deletion function, whether it was set. Now, one of the default setting is when the temporary cache gets too big, Windows will download it automatically without user input. Now, none of the experts in this case were able to tell what the setting was, and I don't know why they aren't able to tell you a step, but the testimony in this trial was we don't know what the Internet cache deletion mode was set to. Now, the government raises the inference that since everything in there was deleted, now, mind you, everything was deleted in there, not just negative images or unlawful images or unlawful pieces of data, to be more accurate, but everything that was in the cache was deleted, including purely innocuous stuff. So the testimony on that is somewhat conflicting. But here's the point, Your Honor. I see what Your Honor's concern is. But this is no different than saying if a user goes on the Internet and takes the affirmative step of downloading that file into their computer, they violated the statute. Nobody would contest that. That is true. Here, we're saying that Mr. Wong did not take that affirmative step. This temporary Internet caching function is not enough because the images in the cache are not accessible until the user does another affirmative step to make them accessible. And, of course, it's a purely autonomous computer function. But he had the ability to take that next step so that he could then use the material that was in the cache? Exactly, Your Honor. Exactly. And there is, you're right, the experts, one of the government's experts does say that maybe that that's not the case with the Windows XP system, but that's clearly erroneous and it's very easy to prove. Under any XP system, you could prove it for yourself, go into your temporary Internet cache and try to manipulate the files in there. You'll see what will happen. The computer will not let you do it unless you try to do something, take an affirmative step of actually creating another file in your computer to store it. So they aren't images, per se, but they are as an archival retrieval mechanism the computer uses in a protected file. Well, I think your point is that the images in the cache are no more possessed by the computer owner than are the images on the Internet until he decides to download something from the Internet or download something from the cache. That would be our position, Your Honor. Now, Your Honor, the real problem here is what we have here is an executive branch determination that when a person knowingly views child pornography on the Internet, that is conduct that violates a criminal statute. And I would be the first to admit that that is conduct that certainly society would have a vested interest in prescribing. The problem here is that we have never gone through the legislative debate, the legislative process of determining how we're going to prescribe that conduct, under what standards, how we're going to deal with the First Amendment issues, and more importantly, what penalty are we going to ascribe to that? The statute, the Internet, the child pornography statute simply does not prescribe viewing alone. It prescribes possessing. It prescribes receipt. It prescribes transmitting. It prescribes distribution. It describes a whole wealth of market-based function activities that get toward eliminating a market in child pornography. And it attaches a pretty stiff penalty to that. If you look at the statute, it has six methods of a violation, A1, 2, 3, 4, and 6. And A1, 2, 3, 4, and 6 all have the same penalty provision, which is even if you want. And it's a stiff penalty, a 15-year mandatory minimum if you have a prior related conviction. It prescribes a separate penalty for possession. Counsel. A lesser penalty. Excuse me. Is it your position that no one can, if you take the government's position, if you view something on the Internet, that there's no way that you can avoid possession or receipt? No. You have committed the attendant circumstances and act as reyes at the court. The government would say, well, we weren't going to prosecute you because we can't prove that you did it knowingly. And, indeed, in the government's answer, it confused me because it seemed to be nonresponsive to the issue I raised because all they want to talk about is we proved that Ron knowingly viewed these sites. And it occurs to me the reason why they are fixated on that is because in this case, because of Ron's statements, they could prove that he did knowingly view these sites. And in the executive branch's determination, viewing Internet sites should be unlawful and should be prosecuted. And that may very well be. But the problem is that the legislative branch has never made that determination. The statute has never, Congress has never gotten together and said let's prescribe viewing Internet sites. And that is an important political determination that should be made not by the courts, not by the executive branch, but by the legislative branch. And the problem with the government's argument structurally with the statute is that the statute prescribes possession at a much lower punishment rate. So under the government's theory, the individual who has a banker box that's full of child pornography carefully cataloged and organized for his viewing pleasure is less culpable than the individual who merely views sites on the Internet. Now, the government likes to say, the government's theory, trial as well, when you view an Internet site, you have some control over that site. But you only have so much control as the web designer allows to give you. The web designer may make it so you can enlarge a picture by clicking on it and you can see a bigger image if the Internet site producer decides to let you do that. Now, their argument that because you can use the functions the Internet site producer gives you, and that gives you possession over the site, is the same as saying, well, I possess a roller coaster at Disneyland because Disneyland allows me to ride it in a certain manner. And it just doesn't make any sense. I mean, the web producer here is certainly culpable. If you make a web site with child pornography, you should and can be prosecuted under Federal law. To take the other step that people who merely view the Internet site can be prosecuted is probably not a set of determination that a lot of people would say clearly you can't prescribe that. The problem is that it's never been legislated. Is it your point that Mr. Rahm negligently or unintentionally had 42 images on his cache of child pornography because he had gotten the URL names wrong somehow? No, Your Honor. If you look at our opening statement, we pretty much concede in the beginning that Rahm knowingly visited these sites. Do you concede that this was a proper border search? No, I don't, because none of the policy reasons animating the border search apply in this case. And the question becomes, really, are we going to tie the warrantless search exception, the border search exception, to the policy reasons animating the exception, or are we going to make the border a complete free-fire zone where the government can search anything they want, assuming you do the physical act and cross the border? Well, it seems to me that it is a free zone. I go back and forth into Canada very regularly, and they search many people just randomly. Right. And, Your Honor, there are sound policy reasons for relaxing constitutional standards at the border, and those policy reasons are all centered around that we have a vested interest in preventing people from bringing items from a foreign origin into the country. Now, that concern was not an issue here. The agents knew that Mr. Rahm did not effectuate an entry into Canada other than a purely physical landed-on-the-ground sense. They knew that he was under continual Canadian custody until he was returned to the country. He certainly did not effectuate an entry into Canada in the legal sense, and he didn't effectuate an entry into Canada that would have allowed him to pick up any contraband. And so here, and we're not saying you cannot investigate somebody like this. Certainly you can investigate it. You just have to do it within constitutional parameters. And there would be nothing that would stop the government from getting a warrant or consent to search in this case. They just chose not to do it. Do you have any cases that support your position? Well, Your Honor, we cite a line of legal reentry cases that we argue by analogy where the court has set forth a standard of legal entry. Oh, my God. Yeah. We don't have anything directly on point here, Your Honor. And there is that Deluca, California, New York court of claims case that goes against this. But other than that, nobody's really mustered any strong authority on this question one way or the other, mainly because this is such a unique situation. It's not something you would expect to find to happen often. One thing I would like to point out here is that the real, when we crystallize the policy, the overall policy of what possibly happened in the prosecution, the real legal linchpin of it here is the visual depiction definition. The visual depiction definition states that something has to be an electronic matter or means or electronic data that is capable of conversion into a visual image. And it says is not, is capable with the use of, you know, governmental forensic examination platforms. The visual depiction definition states that it has to be capable of conversion into an image. At the time Mr. Rahm was looking at these images, it was stored in his computer in such a way that it was not capable of conversion into an image until he took further affirmative steps, which never happened. So that visual depiction is really our safety valve, the legal safety valve that prevents the government from trying to expand the scope of this child pornography statute to include mere acts of viewing. And that's aside from the policy argument here that it simply doesn't say that. The plain language and structure of the statute doesn't support their position. The visual depiction provides our legal linchpin to really crystallize the issue. Now, the sufficiency issue aside, and the third assignment of error where all we're arguing is, well, we should have had the right to argue this to the jury, right? Our contention is that we should have said, well, jury, this statute requires that these have to be images capable of conversion to a visual image. The testimony that we heard here is that they were not. And therefore, you cannot find Mr. Rahm guilty. You should not find him guilty because it doesn't meet this legal definition. So the only way the government can win on my assignment of error, the third assignment of error, that we were not allowed to get a jury instruction on visual depiction, is if you have the kid decide as a matter of law that it meets the definition. Now, in a case hall I've seen is that the courts cannot decide attendance circumstances, elements of a crime, as a matter of law. And I would say to the case of Godin, which seems to have settled that issue, we have to win on the third assignment of error unless this court decides that these images met the definition of visual depiction as a matter of law. To the extent it's debatable as a matter of fact, we should have been able to present that to a jury. Indeed, it was the entire linchpin of our defense. I mean, we went out there and said he viewed these sites, jury. The problem is he didn't receive and possess them because he didn't download anything that could be converted to an image. And would you address the Tucker case in the Tenth Circuit? Yes, I will, Your Honor. And Tucker, we have to see there's two major points of distinguishment that I would raise, aside from the fact that we would say it shouldn't be followed because its analysis on such an important point is rather terse and unsatisfactory in our estimation. The factual distinction is change in operating system, key. And the Tucker, as the testimony showed, Windows, when it went to XP, which is the operating system that was on Mr. Baum's computer, changed its Internet caching system to make it a protected file. So it used to be that the caching system would make essentially a regular file out of the Internet pages. And it did this, as the testimony showed, mainly to harken back to a prior day when everybody had dial-up and it was very difficult for computers to really produce websites. It's much easier now in the temporary caching bunch. It may, in fact, not even be in the next operating system. But when they changed to XP, the testimony was that Windows changed the way it treated its Internet cache. It made it a protected file that was not the same as other files, that did not create images, per se, but created kind of an electronic archival retrieval system rather than regular files. And that change in operating system is key because the Tucker Court relies heavily on the fact that these were just like any other regular file when they were in the Internet cache. And we would argue, too, that the evidence in Tucker was far different than in our case, as a factual matter. The individual in Tucker was trying to argue this as a defense that the facts didn't really fit it at all. He actually did not delete these images. They were actually still really on his computer. And you see that same issue in the late... Two minutes. Oh, I would like to reserve the rest of my time, if I may. Thank you. Good morning. May it please the Court. I'm Assistant United States Attorney Daniel Sheese. The jury's verdict in this case was both legally and factually correct. The defendant's argument to the contrary is based upon his misunderstanding of the expert's testimony at trial regarding the technical aspects of the computer and his misunderstanding of the law. Let me start with the law to build a framework, and then I'll put the facts in context and explain them. The receipt and possession statute makes it illegal for a person to knowingly possess a computer or computer disk that contains images of child pornography when the person knows that the computer contains images of child pornography. Let me ask this, as I ask the opposing counsel. Is it possible to view pornography and then delete it? Yes, it is. It's possible to view it and delete it. That requires a technical understanding of how the system works, which he's wrong. Does the ordinary person who's using a computer and pulls something up on the Internet and views it, do they know how to completely get rid of it, or are they like me, ignorant of how to do it? I don't know what the ordinary person knows, but I know that in this case, the defendant knew how to get rid of it. The testimony was that he first testified. Excuse me, the defendant told the inspectors when he was stopped at the U.S. border that he went into the Internet site, intentionally brought him into his computer, enlarged him, viewed him, and then intentionally deleted them. Now, we don't know if he intentionally set the program to delete the images automatically or if he manually went in and pushed the buttons to do it. Oh. It doesn't matter. I was going to say, that wouldn't seem to matter. It doesn't make a difference because he knew he was deleting them, and by the very fact that he knew he was deleting the images from the memory, he knew that the images were in the memory. You can't delete unless you first know they're there. Can he prevent the images from going into the cache? Yes, by not going onto the website. Oh, I see. But once he goes on the website, even if he's typed the wrong URL address and he wanted to go to some other address and he ends up on a child pornography website, indulge me in that supposition. Once he sees that, is there any way that he can stop the image from going into his cache by pulling out the plug of the computer or crashing it or something of that sort? Technically, it works the other way around. When you go to the website, and this is what he misunderstands. He's not getting correct. And the testimony from both the government and the defense was on this point. When you go into, let's say you go into Google and you put in words that bring up images for child pornography, and then it gives you a bunch of names, the moment you click on that name with the images, it automatically saves the images on your hard drive. Perhaps I haven't put my question well. Suppose that he wants to name babies on. And instead of doing that, he strikes a key wrong and it comes up babes. And then he goes onto a website that has child pornography. Now, if he says, oh, horrors, I'm on the wrong website, can he delete that without it going into his cache? Here's what I'm trying to explain to answer that. I understand your question. By the time you view it, by the time it comes up on your monitor, it's already in your cache. All right. So therefore, conceivably, there could be an innocent person watching the screen and have archived in his cache something that he doesn't want in it. And he would be liable under the statute, as you read it. No, not at all. Why? Because viewing child pornography is not illegal, absent affirmative acts of control, knowing and intentional control over those images. It's not enough to go and go to the website and make a mistake and see it there. You have to intentionally bring that onto your computer. Once it's on your computer, you have to do something to indicate that you knowingly brought it there and wanted it there. Here, we have that evidence. What is that evidence? The defendant first admitted to Inspectors Mako and Swenson when he was interviewed that he went to the website, to the Google, intentionally searched for child pornography, young boys, that he liked it, that he intentionally brought it into his temporary Internet file, viewed it for five minutes. He intentionally then enlarged some of those thumbnail images to view them. He intentionally then, which we know from the forensic examination, stored two of those images from the temporary Internet file over into his regular file. Yeah, but you need three, don't you? You need three on a hard drive to avoid going back up. You only need one in order to comply with the statute. You need more than three to overcome the defense that a defendant can make. So if you look at 2255, it just simply says if you possess an image. But if you go into the later subsections of 2255, it says it's an affirmative defense. If you have fewer than three and you immediately get off, you do things to indicate that it was a mistake. But here you do have three because you have to, if you view the hard drive as a complete object. You just said two. That's why it surprised me. Well, that's, you need to, there were more than two. There were 40-something that were in the memory. Now, the memories basically divide up into sections. One section is to store the temporary Internet files. As Lucky, the expert Lucky for the government and expert Keller for the defense testified, and this, Judge Bay goes back to your earlier question, when you click on a website, the image is immediately stored on your hard drive. When you view it on your monitor, you're not viewing it from the website. You're viewing it off your hard drive. So your hard drive has two sections, one where you store the temporary Internet files and the second where we have what we call a regular, what we as laymen or the average person thinks is stored on the other part of it, which is the layperson. So overall, his hard drive had 40-something, 40-something that he kept in the temporary Internet file, and two of those he moved to the other part of his hard drive. So he had more than three. And Judge Pro, the district court, was not confused by that at all. He clearly recognized that when he addressed his question. Now, in this particular case, there was the defendant's admissions that he knowingly intentionally went to the Internet site to find child pornography involving boys. He explained that he did that in Las Vegas. He explained he did it because he was having a lapse in his therapy. Remember, he had a prior conviction for this, and he lapsed. And so he said, because of that lapse, I intentionally went there. This was no mistake where he was looking at babies and he came across babes or boys. Well, but the viewing, forget that. That's not a crime. Viewing alone is not a crime absent when there's no evidence of control. You have to see the reason I say that is the statutory terms that apply here are receipt and possession. Well, we understand that, but I just didn't want you going on about his lapsing from his therapy and viewing, because that's not the issue. No, but that was relevant to the question of did he intentionally go into that Web site or did he make a mistake and what was the evidence that he intentionally went to that Web site. That's why I brought that up. Did the evidence show that he understood and knew that going to that Web site would file in the temporary Internet memory the images that he saw? Did the evidence show that was your question? Yes. Yes. And that's an element of the crime? No, it's not. But it did show it, though it's not required. And the evidence that showed that he knew it would store that the act of going to the Web site and viewing it on his monitor in the temporary Internet file would store in the cache. My discussion earlier is that he admitted that he deleted the images after he viewed them. That's a different question. Did he testify at the trial or did he? He did not. He admitted that to you. It came in through the investigators who reported what he had said. Yes. Yes. Now, technically, this deletion is a specific act on the computer. It's different from when you look at your monitor and it has that little X in the corner, you just X it, which closes the screen. When you close the screen, the images are still stored in the hard drive. But when you delete it, then you make it so that you can't recover it from the hard drive without doing something else, without going to your recycle bin. So his act of deletion demonstrated that he knew the images were stored from the temporary Internet file. Now, going back to your question, or let me address the defendant's argument about the operating system. And he knew they were stored there because that's what he told the investigators at the border? He told the investigators that he went and deleted the images. And he said there's stuff on there I shouldn't have or something to that effect. What he said was I knew you would find something. Yes. And that context of that admission of I knew you would find something was after he already deleted it. So he understood the technicalities of this electronic world that I don't completely understand of the computers. But he understood that if you delete something, there is software that can still go back in and find it. It might be a little harder to do, but you can do it. But you can do it. And he, by his saying I knew you would find something there, demonstrates the high level of understanding he had of technical aspects of the computer, which is, which leads to the ultimate point that he knew, that the images were saved on the cache when you viewed them in the temporary Internet file. Now, that's important because the statute provides that you have to know something is contained on the computer. Child pornography is contained. The statute does not define the word contained. So we have to look to its ordinary meaning. And the ordinary meaning is just simply that it's held within, it's there, it's present, something of that nature. He knew that it was contained within the computer. One, from the very obvious, when he sat in his hotel room in Las Vegas and looked at the monitor, he saw the images from within the monitor. So the very fact that he viewed the monitor shows that he knew that the computer contained child pornography. And second, by deleting the images, he showed that he knew this higher level, which is not required, that the images were stored. Now, the point I'm making about that is this. We don't have to prove that he knew in the technical sense that the images were stored. We only need to prove that he knew the computer contained it. We don't need to show that he knew how a Windows XP operating system worked. The average layman doesn't need to know that. And Congress doesn't require people to have a technical knowledge. Counsel, tell me again. I'm innocent and I happen on pornography by mistake. Can I completely get rid of it? You mean so it's completely out of your computer? So no expert can come in and pull it up some way. No, because what you need, well, I say you in the context of the average human being who doesn't have a technical understanding. The answer is it's twofold. If you just push delete on your computer, what happens is the images, the data still stays on your hard drive. But there's basically from your button or from your memory a path that leads to where it is on your computer. When you delete it, you're just destroying the path. You know, like the telephone lines, you're cutting the telephone lines so it can't find where it is. So the expert can go in there and search and find it. Yes, because what the expert does is put a type of software on that doesn't have to look where the telephone lines work and just go right into the memory and see what's there. So the answer to Judge Fletcher's question is once a person inadvertently goes to a pornographic site, the pornographic visual depiction, even if the person punches a delete sign immediately, will always be on that computer. Unless you do one of two things. You get specific software that goes in and erases it. Or unless you use your computer so much that what happens is the deleted information eventually is just rewritten over. But a person who innocently comes across information and deletes it will never be able to retrieve it out of his or her computer. That's why, based on your question, viewing is not enough. There must be evidence that a person knew that it was there and intended to control it, to be able to establish. And what is that evidence in this case? Okay. Number one, he testified or not testified. I misused the word. He admitted to the inspectors that he knowingly, intentionally went to the website to find it, to bring it in. Number two, the expert's testimony that when he brought it into the computer, looked, viewed it on the website, it automatically stored it on the computer. Number two. And did he knew that? Did he know that? Yes. He knew that because he took the affirmative technical steps of deleting. Number two, he ---- It's interesting. He knew it was stored because he deleted it. Because the deletion was not just a simple push-the-button delete. There's a way that you ---- The only way you can do it is through a process of going to your Internet website, going to tools, going to Internet options, going to Internet options. You have to be a technical guru to be able to know how to delete. It's not a simple delete key. I've had to have our computer expert walk me through that several times so I can finally figure out how to delete my temporary Internet files. So someone who deletes it, goes through those efforts, knows that it's there because it's like putting together a baby rocket. You've got to figure out, you know, a small rocket. You've got to know what you're doing. But if he goes through those steps because he's a guru to delete it, doesn't that defeat your case? No. Now, analogous to this, let's suppose that you take a magazine that has child pornography in it and you view it and you know that it's there. At that moment, you commit the crime. But if you take the next step now of burning the magazine, the fact that you burn it later doesn't undo the fact that you already possessed it at the time you had it in your hand and you viewed it. Well, this is arguing against yourself, I think, that example. It's like you're saying to me that you cannot view it and still be innocent. No, I'm saying that when he was in Las Vegas, he had the images. He knowingly, intentionally brought the images into his computer. He exercised control over it by bringing it in, by enlarging them. He had to do an affirmative act to enlarge them. He exercised control by moving two of the images to the different part of his hard drive. He exercised control by keeping it on the screen for five minutes to be stimulated by them. He then exercised control by deleting them. When he was done with those five minutes of activities, he then deleted them. That's analogous to after he had the magazine and viewed it, he possessed it for those five moments, committed the crime, the crime's complete. Well, after the crime's complete, he then took the magazine and burned it, deleted it. The very fact that he burns it later on doesn't undo the fact that he already completed or committed the crime for the five minutes while he was sitting in his hotel room. You can't destroy your evidence later and say, whoops, you don't have a case because I burned the books. Well, you committed the crime before you burned the books. He committed the crime before he deleted it. Your argument seems to say to me that viewing is enough. Oh, please don't understand that, because I'm – here's why I'm saying viewing is not enough. Because you have – viewing alone is not enough absent control. You have to possess the items. Possession is defined as knowing of its presence and exercising control. The distinguishing factor between viewing alone and criminal conduct are those affirmative acts of control, of knowing intentionally bringing it in, enlarging it while it's on your screen, intentionally leaving it on your screen, intentionally moving it to the heart of the portions of the hard drive, two of the images. The reason that viewing wouldn't be a crime was if, in Las Vegas, room service waiter would come in and see what's on the screen, he wouldn't be lying. Exactly. And unless he did something more. He had to use it in some fashion. He had to use it in some fashion. You have to use – no, I'm saying – Well, you know, it was interesting to me that it kind of – you know, you've got a reasonably good case for the receipt of this stuff. He goes to the site, brings it up on his screen, enjoys it, if you will, in his method of enjoyment for about five minutes or whatever. He's used it. So it would look as if he has received it. But then you question, well, did he really take possession of it, or can you receive it without ever having possession of it? So it's the same act, isn't it? Receive and possession? Yeah. Oh, there's a huge difference here in this sense. And I'll tell you – my time is up to five seconds. The controlling – the guidance on that comes from the Moore-Barker decision, the 1999 decision in this court. The difference between receiving and possession, though, is receiving is the affirmative step of bringing it in, affirmative step of taking possession. Possession is just simply holding it. Now, you say, well, why does the guideline – I mean, why does the statute draw a distinction? Why does it make a mandatory minimum of 15 for receiving and only five in possession? Yeah, right. Here's the factor. When you go out to receive it, when you do something, you're triggering the supply-demand. You're saying there's a demand for this. Create more. Create more child pornography because the act of receiving signals a demand. And so you have the incentive of child abuse, which Congress in a broad sense wanted to stop, to stop people from going out and making more. Receiving, on the other hand, does not trigger that. Possession on the other hand. I'm sorry. Thank you. I was hoping not to do that. That's pretty good, I'll tell you. You know, a third of the Court understands what you're saying. Possession, though, is just simply having something. It doesn't trigger that supply-demand signals. What it does is it re-victimizes this child every time someone looks at it, every time the image is possessed. Does it possess something without receiving it? Boy, you know, that's a legal technicality. What if it's just sitting there and you pick it up? This is a legal court. Yes. That's good. Don't be afraid. You can do it. I've had a hard time to say how can you receive it without possessing it. I suppose if it's just there on the screen and you begin to exercise control over it or you do something, it's already there. I mean, you could possibly say that it's possession, but the affirmative act of going out to the website, bringing it in, manipulating it, doing something, creates it. So as I thought through what's the difference between receiving and possession legally, one triggers the supply-demand, which creates more victims. The other just re-victimizes the person. Thank you very much, counsel. The government supply-demand analogy would have some force here if there was some actual demand activity that occurred by downloading a file or paying for it or something. We're viewing this as though it's not going to give anybody any market incentives to do anything. Now, let's get one technical. That could be said of all advertising. Excuse me? That could be said of all advertising that is free. Well, I guess if the Internet sites are advertising, that's a whole different problem, right, Your Honor? I mean, they should be going after those Internet sites. I mean, so they want to channel their prosecutorial resources. The other thing, Your Honor, let's get this very clear. Mr. Wong, when he is done looking at the Internet and he signs off the Internet, those images in the temporary Internet cache are not capable of conversion into a visual image, as the statute requires. Unless he takes another step. Exactly. Because they are capable, provided you take another step. Right. And the other step, if you get back on the Internet and try to go into your Now, if you're off the Internet, it will say, well, we can't retrieve that file because you're not on the Internet. So the statute requires a computer disk or electronic means, which is capable of conversion into a visual image. Now, am I relying on the temporary cache function? That's their Achilles heel, because it's not. It simply isn't under the Windows XP system. Let's see. You keep saying it was not convertible, and yet all you had to do was take another step, and it is convertible. But is the answer that you had to go out, I think Mr. Copay said something about, get another software, get another piece of equipment, come in, attach it to your computer, and then you can? If they had been deleted. When they're in your cache, you could take a less extensive affirmative step than that. You could tell your computer, go into the Internet cache and save this as a regular file. If you tell the computer to do that, then it will appear on your computer as a regular file. Then it's capable of conversion into a visual image. Until you take that affirmative step, then it's not. And that affirmative step would be from once criminal liability is generated, right? Because then you have completed the access rights and the affirmatives. So even though this man could have done that, because he didn't do it, he never possessed it, is that what you're saying? Right. And once he had done that, then yes, he is now possessed and received the images. And that would be appropriate, in a sense, because then you're taking these affirmative acts to store in your computer visual images. In this case, what the individual did was use the Internet as his repository and look at images on the Internet. And he had no more control. The government uses this term, I would say, inappropriately. He had no more control than whatever the web designer decided to give him. As the web designer is the repository, the web designer is in possession and received this material. You are merely viewing it under the web designer's discretion and control. They have control of the images, and they have control of what you see and how you see it. And that is the whole problem here. Your time is up, counsel. Thank you. Procedural question. He violated his parole. Has he been? Probation. His probation. Was that? Did they have a hearing on that? It's still pending. He has a detainer on that. So they haven't had any hearing on that? Right. Okay. Thank you. Thank you very much. Thank you for a very interesting argument from both counsel. And we.
judges: B. Fletcher, Thompson, Bea